No. 26,145.

ALTA I. BROWN et al., *Appellants*, v. ALONZO C. KIDWELL et al., *Appellees*.

### SYLLABUS BY THE COURT.

PLEADING—*Petition—Sufficiency as Against Demurrer.* A petition and the cause or causes of action for miscellaneous claims and damages attempted to be stated therein considered, and *held*, a demurrer thereto was properly sustained, and the action was properly dismissed.

Appeal from Hamilton district court; CHARLES E. VANCE, judge. Opinion filed March 6, 1926. Affirmed.

*W. H. Brown,* of Syracuse, for the appellants.

*H. E. Walter,* of Syracuse, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action by Alta I. Brown and her husband was commenced in the district court of Hamilton county against a number of defendants, most of whom were relatives of the plaintiff wife, and all of whom were nonresidents of Kansas, some living in Indiana, others in Iowa, and some in various counties of Missouri.

Other defendants were named, as follows: "William M. Poynter, executor of the estate of Mary E. Kidwell, deceased; William M. Poynter and Minnie Poynter, his wife; Henry J. Kidwell; William M. Poynter, trustee by appointment probate court, Livingston county, Missouri, under the last will and testament of Mary E. Kidwell, deceased; Alonzo C. Kidwell, guardian of Henry J. Kidwell, insane person, pretending to act under the orders of authority of the courts of state of Indiana; John L. Schmitz and Elton L. Marshall, lawyers of Chillicothe, Mo.; the unknown heirs, administrators, executors, devisees and trustees and assigns of said defendants that may be dead."

In the last of plaintiffs' often amended petition their cause of action was attempted to be stated at such great length that it is impracticable to reproduce it. Its most significant features, much abridged, may be stated in narrative form thus:

Alta I. Brown and Roscoe B. Brown, wife and husband, in 1913 resided on a farm in Hamilton county, Kansas. They owned their

Damages, 17 C. J. pp. 751 n. 30, 807 n. 77, 78. Fraud, 26 C. J. p. 1080 n. 87; 27 C. J. pp. 33 n. 1, 37 n. 47. Pleading, 31 Cyc. p. 292 n. 83. Vendor and Purchaser, 39 Cyc. p. 2018 n. 18. Work and Labor, 40 Cyc. p. 2839 n. 7.

farm, which was worth $2,500, and they had $1,200 worth of personal property, consisting of farm machinery, eight work horses and eighteen head of cattle. Roscoe held an insurance policy for $1,000, on which all premiums had been paid, and Alta was named as beneficiary thereof. They alleged they were "prosperous, contented and satisfied with their surroundings and did not care to change from Kansas to Missouri." The father and mother of Alta lived on a homestead near Bedford in Livingston county, Missouri. The mother held the fee and the homestead consisted of a house and some 27 acres of stump and timber land, more or less. Plaintiff's mother, Mary E. Kidwell, died in 1913 and devised a life estate in the homestead to her husband, Henry J. Kidwell, with remainder to Alta I. Brown and her two brothers and four sisters, Alonzo C. Kidwell, William W. Kidwell, Nora E. Foltz, Mary M. Stirling, Florence C. Stirling and Lizzie M. Austin. The father and brothers and sisters of Alta persuaded her and her husband to dispose of their property in Kansas and move back to Missouri, and to purchase the Missouri homestead for $2,000. Part of the purchase price was to be paid by boarding and lodging the father, Henry J. Kidwell, at four dollars per week. Alta and Roscoe bought the property and moved to Missouri. The land was covered with logs, stumps, brush, and ditches; the fences and improvements were badly out of repair; and plaintiffs expended $800 in money and three years' hard work to put the property in good order. At the time plaintiffs bargained for the property they demanded that the abstract of title should be examined, but defendants persuaded them that there was no use to go to that expense because a man named Poynter (evidently a trusted friend of the family), who knew all about land titles, had advised the father and mother that the title was valid and merchantable.

In 1917 Alta and Roscoe decided to sell the property and found a buyer at $2,800, who demanded an abstract showing good title. Plaintiffs obtained an abstract and submitted it to a lawyer, who found twenty-two serious defects in the title. Plaintiffs informed the defendants of this situation and they agreed with plaintiffs to have the land surveyed and the title perfected. The survey disclosed 22.69 acres and the title was quieted at an expense of $250, of which sum $200 was paid to a firm of lawyers, Schmitz & Marshall, of Chillicothe, Mo. The prospective purchaser who had agreed to buy at $2,800 declined to pay more than $2,420 on account of a

shortage in the represented acreage. It can be inferred that the property was disposed of on those terms, although a specific allegation to that effect is wanting.

Henry J. Kidwell, the father, died in 1922, and Alta's brothers and sisters withheld her one-seventh share of the property devised by her mother's will. This property consisted of a $600 note, $1,600 worth of stock in a Missouri bank and personal property valued at $2,000; and Alta was compelled to file an action in the circuit court of Livingston county, Missouri, to recover her share of this property. In that action a defense was set up that she, together with her brothers and sisters, as heirs of their deceased mother, had consented in writing to the appointment of William M. Poynter as trustee of all the property of Mary's estate. Alta asserted that her signature to this writing was a forgery. However, the brothers and sisters offered to settle the case by paying Alta the sum of $300. The costs and expenses incurred by Alta and her husband to recover this sum amounted to $200. It may be inferred that the case was settled on the terms offered by the brothers and sisters.

It does not appear that the alleged agreements, representations, understandings or bargains between plaintiffs and their defendant relatives were in writing, and throughout the petition where specific allegations are made as to representations and agreements it is alleged that they were by parol.

The petition characterizes the dealings of the parties as conspiracies, concerted plots and connivances on the part of defendants to cheat and defraud the plaintiffs.

The nature of the action as a whole is fairly indicated by plaintiffs' prayer for judgment. They ask for $64 from all the defendants, presumably for board and lodging for the father, Henry J. Kidwell; for $800 expended for labor, material, improvements, and taxes on the Missouri homestead property; for $319.28 on account of a shortage in the acreage of the Missouri homestead; for $250 expended for cost of survey and attorneys' fees in suit to quiet the title to the homestead; for $2,000 as actual, exemplary and punitive damages, presumably sustained by plaintiffs in moving from Kansas to Missouri and in the loss and cancellation of their policy of life insurance on which they were unable to continue to pay the annual premiums. They also asked $200 for expenses and damages sustained in seeking to recover Alta's share in her mother's estate in the action in the circuit court in Missouri. They also ask $500

for rents and damages sustained by plaintiffs on account of defendants keeping plaintiffs out of possession of some Hamilton county land, but the petition does not disclose what they refer to. Another item of damages prayed for was $300 on account of some false statements made in filing an inventory in the circuit court of Hendricks county, Indiana. Attached to the petition were copies of the will of Mary E. Kidwell and the deed conveying the Missouri homestead to Alta I. Brown. The deed does not state or indicate the total acreage. It describes three tracts, one of 12 acres, one of 8 acres, and one irregular tract the acreage of which is not stated, but which would be easily determinable with the aid of a plat, but not otherwise.

Appearing in the abstract also is a pleading or document entitled: "Amendment to amended petition rewritten more definite and certain before answer," the significance of which does not readily appear, but incorporated therein are parts of letters written to Alta, one by her brother, William W. Kidwell, and one by her sister, Mary M. Stirling.

To this petition a demurrer was filed by Alonzo C. Kidwell, who was named as defendant personally and also named defendant as "guardian of Henry J. Kidwell, an insane person, pretending to act under the orders of authority of the courts of the state of Indiana." The grounds of the demurrer urged were:

"1. That the said court has no jurisdiction of the defendants in this, that service upon the defendants Poynter, Schmitz, Marshall, and Kidwell, guardian, is by publication because of their nonresidence, yet the nature of the action is a transitory one and there is no showing of any facts necessary to authorize jurisdiction to be obtained by the court;

"2. That several causes of action are improperly joined, in this, to wit: That the cause of action set out in paragraph 7 of said amended petition is one against the estate of Henry J. Kidwell, deceased;

"That the causes of action set out in paragraphs 11, 13 and 16 are against the defendant A. C. Kidwell only, and do not concern the other defendants;

"That the cause of action against the defendants Schmitz and Marshall, as set out in paragraphs 9 and 10 of the said amended petition, concerns them only and does not affect the remaining defendants;

"That the cause of action in said amended petition attempted to be set out for failure of covenants of warranty inures to benefit of plaintiff Alta I. Brown, while the causes of action attempted to be set out for loss of property inures to plaintiff Roscoe B. Brown, and the causes of action for moneys and labor expended inure to both plaintiffs Alta I. Brown and Roscoe B. Brown;

"3. That said amended petition does not state facts sufficient to constitute a cause of action against the defendants or either or any of them."

The trial court sustained this demurrer and dismissed the action. Plaintiffs appeal.

This is the sort of case which occasionally comes before this court, where, when the main facts are outlined on paper, the unavoidable decision is obvious at once to minds of legal training, but which may not be so readily explainable to the litigants concerned. Here there is so much the matter with the action plaintiffs sought to maintain against their relatives and these other defendants that our limited time will only permit us to indicate briefly a few of them. This we will endeavor to do, avoiding as far as may be the legal phraseology which laymen would not understand. And first, to begin with plaintiffs' demand for $64 for board and lodging Alta's father: The petition does not show why all these people made defendants in this action should be sued for that board bill. Moreover, the charge for the father's board and lodging was to be applied on the purchase price of the Missouri homestead. It is not shown that any of defendants refused to give credit therefor according to agreement. Nor is it shown why the account was not presented to the administrator of the father's estate. So plaintiffs cannot recover that $64 in this action.

Neither can defendants be held to answer for the expenditures of money and hard work on the Missouri homestead. The petition does not allege that defendants made any contract with plaintiffs about these matters. Nor does it show that defendants were guilty of any act or omission which caused that outlay of work and labor. The petition does allege that plaintiffs were "prosperous, contented and satisfied" in Kansas, and that defendants "represented orally to plaintiffs that if plaintiffs would buy said lands and move to Missouri from Hamilton county, Kansas, where plaintiffs then lived and resided, and move upon said lands, plaintiffs could and would make more money and live better and more comfortable than to remain where they lived in Kansas." But those representations were mere matters of opinion. They could not be declared to be willful misrepresentations of fact. Moreover, the petition fails to allege to what extent, if any, these representations turned out to be false or illusory, nor does it set up the damages which flowed therefrom. This item is not recoverable.

Touching the demand for $319.28 based upon an alleged shortage in the acreage of the Missouri homestead: The deed shows conclusively what property was to be conveyed—one tract of twelve

acres, more or less; one tract of eight acres, more or less; and one irregular tract of unstated but readily ascertainable acreage. It is not alleged that plaintiffs did not get all the acreage the deed called for, and plaintiffs did not buy the property on a per-acre basis. They bought a particular property for a lump sum. The fact that when they came to sell the property their prospective buyer declined to buy except on a *pro rata* basis of the actual acreage to the supposed acreage, and that plaintiffs yielded to that buyer's attitude on that point, gave plaintiffs no claim on defendants. Moreover, they sold the property at a substantial advance over what they paid for it after enjoying the property, or at least after having had the use of it, for several years. This item is not recoverable against these defendants.

Plaintiffs have also been ill-advised in seeking a recovery of $250 for attorneys' fees and costs in the suit to quiet title. Plaintiffs had been content to accept the title on the purported approval of one Poynter. They obtained possession under that title. Nobody claiming under any one of the twenty-two alleged flaws in the title ever vexed plaintiffs in their title or possession. That the next buyer of the property could not be induced to accept title on the former approval of Poynter, but insisted on an independent examination of the title by other examiners, at considerable expense to plaintiffs, gave them no claim against these defendants. Nor can any basis be discerned for mulcting defendants for $2,000 as damages for some undefined losses occasioned to plaintiffs in moving from Kansas to Missouri. That removal may have been improvidently undertaken, and defendants may have urged and advised it, and but for such urging and persuasion plaintiffs might never have gone to Missouri. But the family or business expenditures which would have been avoided, as well as the losses of conjectured profits they might have made in Kansas, if that ill-starred sojourn in Missouri had never been undertaken, were not the sort of damages for which an action will lie against plaintiffs' relatives and these other defendants.

Neither can plaintiffs recover for the loss or cancellation of the insurance policy. The defendants could not be expected to have foreseen that plaintiffs' removal to Missouri would lead them into such financial difficulties that they could not keep up their payments of annual premiums.

Touching the claim for $200 for expenses incurred in a lawsuit

to recover Alta's share of her mother's estate, the law does not allow one party to a lawsuit to charge the defeated party with the ordinary expenses incurred by the prevailing party. Certain court costs are allowed which are taxed and charged in that lawsuit to the losing party, but these costs are no basis for another lawsuit like this one. Still less is the claim for $200 "for expenses and damages" in that action a proper basis for this action.

Just what is the basis for plaintiffs' claim for $500 for keeping plaintiffs out of possession of some Hamilton county land is not apparent. The petition discloses nothing about it, and of course the trial court properly ruled it out. And the same observation must be made concerning plaintiffs' claim for $300 because of false statements made by somebody in filing an inventory in some court in Indiana. The petition does not show why defendants should be held liable therefor, nor does it show why $300 is asked on this score rather than $3,000, or $3, or any other sum.

In the foregoing we have endeavored to treat this case from a point of view which the litigants themselves might be able to understand. Less words should be required to dispose of the argument of plaintiffs' counsel. While a proper action may be brought against nonresidents of Kansas in any county where they have real property, that does not justify their being annoyed and put to expense to defend ill-founded damage suits designed to secure merely colorable judgments *in rem* affecting their Kansas land titles. Moreover, the vice of misjoinder of causes of action and multifariousness inheres in plaintiffs' petition in a peculiarly aggravated degree if it could be conceded that plaintiffs' divers and sundry grievances alleged against defendants constituted any sort of otherwise maintainable causes of action. Not only was the court's ruling on the demurrer correct, but having regard to the possible effect of such a lawsuit on the titles to lands in Hamilton county belonging to these nonresident defendants, if that, indeed, was the motive which prompted this abortive proceeding, the trial court is to be commended because it dismissed the action in its entirety, not only as to those who filed any motion or other pleading, but as to those also, if any, on whom constructive service was sought to be obtained, as well as those on whom not even a pretended service was effected.

The judgment is affirmed.